UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

BRIAN ANTHONY PEEPLES,

           Petitioner,

           Case No. 2:17-cv-83

v.

           Honorable Gordon J. Quist

CONNIE HORTON,

           Respondent.
_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Brian Anthony Peeples is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. Following a jury trial in the Wayne County Circuit Court, Petitioner was convicted of first-degree murder, in violation of Mich. Comp. Laws § 750.316(1)(b), armed robbery, in violation of Mich. Comp. Laws § 750.529, assault with intent to commit murder (AWIM), in violation of Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony (felony firearm), second offense, Mich. Comp. Laws § 750.227b. On March 12, 2015, the court sentenced Petitioner as a habitual offender-fourth offense, Mich. Comp. Laws § 769.12, to prison terms of life for murder and 25 to 50 years for armed robbery and AWIM. The court ordered Petitioner to serve those sentences concurrently, but consecutively to a 5-year sentence for felony firearm, second offense.

       On April 19, 2017, Petitioner timely filed his habeas corpus petition raising four grounds for relief, as follows:

      I.    Petitioner was denied effective assistance of counsel where a criminal defendant is entitled to the effective assistance of trial counsel that subjects

      the prosecution's case to meaningful adversarial testing. Trial counsel's unreasonable performance in failing to request a *Walker* hearing or even be prepared to argue the admissibility of the defendant's statements made at the time of his arrest did not subject the prosecution's case to meaningful adversarial testing. Therefore, the defendant was denied his right to the effective assistance of counsel and entitled to a new trial.

II.    Petitioner was denied his constitutional right to a fair trial where hearsay evidence is not admissible where the declarant is unknown, unless the evidence falls under one of the recognized exceptions to the hearsay rule. Test messages allegedly sent and received by a cell phone number purportedly used by the defendant on the day of the shooting were not admissible under the statement against penal interest exception to the hearsay rule or any other exception to the hearsay rule. Therefore, the trial court erred in reversing its prior ruling excluding the text messages.

III.    Petitioner was denied his constitutional right to a fair trial when a document, record, writing or other communication is introduced into evidence, the document, record, writing or other communication must be authenticated for admission under MRE 901, where the prosecution could not establish that it was the defendant sending and receiving the text messages. Therefore, the trial court abused its discretion in admitting the cell phone records.

IV.    Petitioner was denied his constitutional right to a fair trial when determining whether sufficient evidence has been presented to sustain a conviction, the reviewing court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. In this case, the evidence, absent the defendant's statements made at the time of his arrest and the text messages allegedly sent and received by the defendant, was not sufficient to establish the defendant's identity as the shooter beyond a reasonable doubt. Therefore, the defendant is entitled to a new trial.

(Pet., ECF No. 1, PageID.4-7.) Respondent has filed an answer to the petition (ECF No. 18) stating that the grounds should be denied because they are non-cognizable or meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless. Accordingly, I recommend that the petition be denied.

**Discussion**

I. Factual allegations

During the early evening hours of June 14, 2014, Mr. Leslie White and Ms. Shaneqwa Carr drove to the BP gas station on the corner of 8 Mile and Dequindre in Highland Park, Michigan. (Trial Tr. II, ECF No. 19-5, PageID.419-421.) Ms. Carr went into the station to make a purchase. (*Id*., PageID.422.) She came back out to the car and climbed into the passenger seat. (*Id*., PageID.423.) A man ran up to the vehicle and told Mr. White to give up "what you got." (*Id*., PageID.424.) Mr. White resisted. (*Id*., PageID.425-426.) The man fired several bullets at Mr. White at very close range. (*Id*.) Ms. Carr fled the vehicle, but discovered she was shot in the leg. (*Id*., PageID.426-427.) She collapsed. (*Id*.) Mr. White took two bullets to the head and one to the chest. (Trial Tr. I, ECF No. 19-4, PageID.404.) He died instantly. (*Id*., PageID.407.)

Ms. Carr spoke with Petitioner inside the gas station and was able to identify him from that contact (Trial Tr. II, ECF No. 19-5, PageID.422); but, she could not see the man who fired the shots (*Id*., PageID.424). It happened too quickly. (*Id*.) Witnesses testified that they saw Petitioner fleeing the scene—one witness even saw Petitioner with a gun in his hand—but no witness testified that they saw Petitioner pull the trigger. (*Id*., PageID.452-465; 489-508.)

Mr. White was leaving a voicemail message for a friend, Bernard Hall, when the armed robber came up to the car. Mr. Hall testified that he heard Mr. White say, "you're not getting my money," then five gunshots, and then a lady screaming. (Trial Tr. II, ECF No. 19-5, PageID.439.)

A Detroit police officer pulled together security camera video data from the gas station and the bar next door. (Trial Tr. I, ECF No. 19-4, PageID.386-387.) The video data showed Petitioner walking from behind the bar next to the gas station, entering the gas station, speaking with Ms. Carr, and then exiting the gas station and confronting Mr. White. (*Id*., PageID.389-397.)

3

A gas pump, however, obstructed the view of the gunman when he arrived at the victim's vehicle. (*Id.*, PageID.395.)

Petitioner spoke by telephone with his child's mother the next day. (Trial Tr. II, ECF No. 19-5, PageID.443.) She saw video of Petitioner from inside the gas station on the television news the night before. (*Id.*, PageID.441-442.) He asked if she had seen the news. (*Id.*, PageID.443-444.) She acknowledged she had and asked what happened. (*Id.*) She reported that he said the other guy had a gun and it was a "him or me" situation. (*Id.*, PageID.445-446.) He told her that, during the struggle, the girl got shot. (*Id.*, PageID.447.)

Detective Jason York from the United States Marshall's office in Indianapolis testified regarding Petitioner's capture. (*Id.*, PageID.466-467.) After the officers finished patting Petitioner down, Detective Jason York asked about the location of a gun. (*Id.*, PageID.470-471.) Petitioner replied: "Man, I don't have no gun. The revolver I sh[o]t that motherfucker with was chopped up in three or four pieces and is gone." (*Id.*, PageID.471.) Petitioner continued to volunteer information thereafter, to the officers and the gathering crowd. He stated:

> I think that bitch set me up. Ol' boy looked like he was grabbing for something so I shot him.
>
> I'm from Detroit on Eight Mile. That's how we do things there.
>
> Look [racial epithet], I told you I was a killer. They sent the feds after this killer. I'll be seeing you in 50 to 100. [repeated several times]

(*Id.*, PageID.471-472.)

A special agent with the Bureau of Alcohol, Tobacco, & Firearms provided expert testimony regarding a cell phone that was linked to Petitioner by his child's mother. The officer analyzed records from the cell phone service provider. (*Id.*, PageID.513-529.) Based on the phone records, the agent pinpointed Petitioner's location at times relevant to the incident at the BP station.

(*Id*.) The officer reported that the location information was consistent with Petitioner's presence at the gas station at the relevant time. (*Id*.)

The response also included the texts sent and received from that phone. (*Id*.) There were texts earlier the same day that included Mr. White's address. (*Id*.) There were other incriminating texts as well.

Petitioner's counsel attempted to exclude the statements Petitioner made to police and the crowd when he was captured because Petitioner had not received *Miranda* warnings before the statements were made. (Trial Tr. I, ECF No. 19-4, PageID.246-248.) The court refused to exclude the statements. (*Id*., PageID.248.)

Petitioner's counsel also attempted to exclude any information regarding specific texts to Petitioner. (*Id*., PageID.249-253.) The court sustained counsel's objection, initially. (*Id*., PageID.252.) The prosecutor later supplied the court with additional authority, the court reconsidered, and the court overruled Petitioner's objection. (*Id*., PageID.398-399.)

Petitioner was initially charged with first-degree murder based on premeditation. Petitioner's counsel moved for and was granted a directed verdict on that charge. As to the other charges, however, the jury deliberated for about an hour before announcing its verdict that Petitioner was guilty. The trial court then sentenced Petitioner as set forth above.

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals, raising the same four issues he raises in his petition. Petitioner filed a motion to remand so that the trial court could conduct a *Ginther* hearing, an evidentiary hearing in the trial court to develop the factual foundation for Petitioner's ineffective assistance of counsel claims. On December 11, 2015, the court of appeals denied Petitioner's motion to remand. (Mich. Ct. App. Order, ECF No. 19-8, PageID.746.) By unpublished opinion issued July 26, 2016, the

court of appeals rejected Petitioner's challenges and affirmed the trial court. (Mich. Ct. App. Op., ECF No. 19-8, PageID.632-636.)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising his four "court of appeals" issues plus a new issue challenging the court of appeals' denial of his request to remand for a *Ginther* hearing. By order entered January 31, 2017, the Michigan Supreme Court denied leave to appeal. (Mich. Order, ECF No. 19-9, PageID.780.) This petition followed.

II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.     Self-Incrimination

Petitioner contends that the prosecutor's introduction into evidence, through the testimony of Detective Jason York, of statements Petitioner made at the time of his arrest violated his constitutional right against self-incrimination. The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). Even so, "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good . . . . Admissions of guilt resulting from valid *Miranda* waivers are more than merely desirable; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Texas v. Cobb*, 121 S. Ct. 1335, 1342 (2001) (quotation and citation omitted). The cases in which a defendant can make a colorable argument that a confession was compelled despite the fact that law enforcement authorities adhered to *Miranda* are rare. *Dickerson*, 530 U.S. at 444 (citation omitted).

Petitioner complains that certain statements he made at his arrest preceded any *Miranda* warnings and, therefore, should have been excluded. He notes that his counsel sought that relief at the beginning of trial with respect to: (1) his statement to Detective York that

8

Petitioner had already disposed of the gun; and (2) his statements to the gathered crowd that he was a killer. The trial court rejected Petitioner's claim with respect to his statement about the gun under the "public safety" exception articulated in *New York v. Quarles*, 467 U.S. 649 (1984). The trial court rejected Petitioner's claim with regard to the "killer" statements because they were made to the crowd, not police, and they were volunteered, not a response to any question or statement by police. The court of appeals reached the same conclusions. (Mich. Ct. App. Op., ECF No. 19-8, PageID.633-634.)

The Sixth Circuit explained the nature of the "public safety" exception in *Hart v. Steward*, 623 F. App'x 739 (2015):

> In *Quarles*, the Supreme Court explained that when officers ask "questions necessary to secure their own safety or the safety of the public" as opposed to "questions designed solely to elicit testimonial evidence from a suspect," they do not need to first provide *Miranda* warnings. *Id*. at 659. In *United States v. Williams*, 483 F.3d 425 (6th Cir. 2007), this Court held that *Quarles* requires an officer to "have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *Id*. at 428.

*Hart*, 623 F. App'x at 746. Petitioner does not dispute that Detective York's question fits squarely within the exception.

*Miranda* makes clear that Petitioner's other statements are not protected:

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

*Miranda*, 384 U.S. at 478. Petitioner does not dispute that his statements were not prompted by any questions from police, nor does he deny that he voiced the statements to the crowd, not the officers. Instead, he contends that his mental state might have rendered his statements coerced.

Petitioner's mental state, to the extent it reflects his susceptibility to coercion, would have no effect on a "public safety" question that does not require *Miranda* warnings.

Similarly, Petitioner's mental state could not convert voluntary statements to the crowd into statements coerced by the police.

The Michigan Court of Appeals rejected Petitioner's claims under the "public safety" exception and because his statements to the crowd were voluntary. (Mich. Ct. App. Op., ECF No. 19-8, PageID.632-633.) Petitioner has failed to demonstrate that the court of appeals' supporting factual determinations were unreasonable on the record. He has also failed to demonstrate that the court of appeals' resolution of his challenge to admissibility was contrary to, or an unreasonable application of, either *Miranda* or *Quarles*, the clearly established federal law regarding limitations on the admissibility of confessions and the "public safety" exception.

IV.  Hearsay and Authentication

Petitioner contends the admission of the cell phone records was improper under Michigan Rule of Evidence 901 because the phone, or the text messages sent and received on the phone, were not sufficiently linked to him. Petitioner also contends the admission into evidence of three text messages received on the phone violated the proscription against hearsay evidence set forth in Michigan Rule of Evidence 802.

The Michigan Court of Appeals rejected Petitioner's contention regarding authentication of the phone and the information derived from it:

> Authentication can be accomplished through the testimony of a witness with knowledge "that a matter is what it is claimed to be." MRE 901(b)(1); see also *People v McDade*, 301 Mich App 343, 352-353; 836 NW2d 266 (2013). Here, a witness, who has a child with defendant, identified the phone number at issue as the phone number that she knew defendant to use; it was the number that defendant would call her from and the number that she used to contact him. Significantly, the witness testified that defendant called her from the phone number in the morning on the day following the shooting, during which conversation they discussed the news reports of the crime and defendant shared details of the shooting incident. Further, under MRE 901(b)(4), authentication can be accomplished through distinctive characteristics taken in conjunction with the circumstances. Here, the special agent who analyzed the certified phone records associated with the particular phone number and the timeframe surrounding the shooting testified that

10

> defendant's name was referenced 91 times in text messages, including on the day of and after the shooting. The multiple references to defendant's name in the text messages was certainly a distinct characteristic that, taken in conjunction with the testimony identifying the phone number as defendant's phone number, indicated that defendant was actually using the phone and sent and received the text messages, as the prosecution claimed. On this record, the evidence was sufficient to authenticate the text messages as being sent from and received by defendant, and the trial court did not err in admitting them.

(Mich. Ct. App. Op., ECF No. 19-8, PageID.635.) The appellate court also rejected Petitioner's claim that the text messages received by the phone were hearsay:

> We have carefully scrutinized the text messages, and they simply do not constitute hearsay, either because there is no "assertion" in the text message, MRE 801(a), or because the text message was not "offered in evidence to prove the truth of the matter asserted, MRE 801(c). See *People v Jones (On Rehearing After Remand)*, 228 Mich App 191, 203-226; 579 NW2d 82 (1998), mod in part on other grounds 458 Mich 862 (1998). Moreover, given the strong evidence of guilt, including defendant's statements implicating himself in the offenses, any assumed error in admitting the text messages was harmless, lacking any prejudicial impact. *People v. Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999); *Carines*, 460 Mich at 763.

(Mich. Ct. App. Op., ECF No. 19-8, PageID.634 (footnote omitted).)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496,

11

512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860.

Petitioner has not met this difficult standard. Petitioner's argument on these issues cites no federal authority at all. The only links to the federal constitution in Petitioner's arguments are his use of the words "constitutional right to a fair trial" when he first states the issues. With those words, Petitioner calls into question whether the admission of the phone records and the texts violated the protections of due process. Beyond those words, however, Petitioner cites only state authorities interpreting and applying state rules of evidence.

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. Furthermore, "'a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Richey*, 546 U.S. at 76). Thus, this Court is bound by the state court's conclusion that the phone records are sufficiently authentic under state law and that the texts are not hearsay.

Even if this Court were writing on a blank state, and even if the Court determined the phone records and texts were not admissible, Petitioner would still not be entitled to relief because there is no Supreme Court authority holding that: (1) evidence like the phone records and

texts is constitutionally inadmissible because of authenticity issues, *see, e.g., Youssef v. Miller*, No. 1:15-cv-02150, 2017 WL 7693370, at *11 (N.D. Ohio July 26, 2017); or (2) evidence like the texts is constitutionally inadmissible because of hearsay issues, *see, e.g., Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013). Therefore, Petitioner cannot demonstrate that the state courts' determinations that the evidence was admissible are contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on these claims.

V.      Ineffective Assistance of Counsel

Petitioner contends that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment when he failed to adequately raise the issues discussed above regarding the admissibility of Petitioner's statements upon his arrest or the phone records. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance

13

was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals relied expressly upon the *Strickland* standard in rejecting Petitioner's ineffective assistance claims. (Mich. Ct. App. Op., ECF No. 19-8, PageID.632-633, n.2.) As to each issue, the appellate court concluded that Petitioner's position was meritless such that it was not professionally unreasonable for counsel to forego further challenges to admissibility nor could the failure to pursue further challenges be prejudicial to Petitioner. (*Id.*, PageID.632-636.)

As set forth above, Petitioner's underlying claims lack merit. The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741,

752 (6th Cir. 2013). Because counsel's conduct—declining to pursue further the exclusion of Petitioner's statements upon arrest and phone records—is both professionally reasonable and not prejudicial to Petitioner, Petitioner has failed to demonstrate that the state courts' rejection of his ineffective assistance claims is contrary to, or an unreasonable application of, *Strickland*. Accordingly, he is not entitled to habeas relief on these claims.

## VI. Sufficiency

Finally, Petitioner challenges the sufficiency of the evidence against him. Petitioner's argument is premised on the exclusion of the incriminating statements he made to police upon his arrest and the text messages. Because the statements and text messages were properly admitted, his argument necessarily fails. Nonetheless, the Michigan Court of Appeals took the extra step of reviewing the evidence without the statements and text messages. (Mich. Ct. App. Op., ECF No. 19-8, PageID.635.)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The court of appeals applied a standard that was functionally identical to the *Jackson* standard.  (Mich. Ct. App. Op., ECF 19-8, PagID.635, n.4.)  The court reviewed the evidence against that standard as follows:

> Here, the female shooting victim identified defendant as being in the gas station with her shortly before the shootings, and she testified that he attempted to converse with her, although she could not identify defendant as the shooter.  Video footage obtained from the gas station's security camera was employed to track the man who spoke to the female victim inside the station back to the victims' vehicle, where the individual made maneuvers consistent with the robbery and shootings.  Also, the witness mentioned earlier who shares a child with defendant testified that it was defendant in the video footage from the gas station.  Moreover, she testified that defendant made statements to her on the day after the shooting in which he implicated himself in the crimes.  Additionally, a bicyclist testified that he saw defendant with a gun at the victims' vehicle just after shots were fired.  This evidence was more than sufficient to identify defendant as the perpetrator.  And when his inculpatory statements to the police and the text messages are added to the mix, the evidence of defendant's guilt becomes overwhelming.

(*Id.*, PageID.636.)

Petitioner argues that the facts identified by the court of appeals only establish that he was at the gas station at the relevant time.  (Pet'r's Br., ECF No. 2, PageID.52.)  They do not,

he claims, establish that Petitioner was the shooter or that he was involved in the shootings at all. (*Id*.) Petitioner's argument disregards the jury's power to draw reasonable inferences from the evidence.

*Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. Certainly, the inference identified by the court of appeals—that the evidence putting Petitioner at the scene of the shooting with a gun in his hand supports the inference that he fired the shots—rationally flows from the underlying facts. The inference is not compelled by those facts. The inference may not even be more likely than not. It is simply rational. *Id*. at 656. To succeed in his challenge, Petitioner must show that the identified inference is irrational. He has not made, and cannot make, that showing. His showing that other inferences might follow from the circumstances—inferences that favor him—is immaterial.

Petitioner has failed to show that the Michigan Court of Appeals' factual determinations are unreasonable. He has also failed to demonstrate that the court of appeals' legal determinations are contrary to, or an unreasonable application of, *Jackson*. Accordingly, he is not entitled to habeas relief on his sufficiency claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of

appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Date:   April 3, 2019                             /s/ *Maarten Vermaat*
                                                                                   MAARTEN VERMAAT
                                                                                   U.S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).